**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AUDREY McCASH**<br>**Furlong, PA 18925**<br>**Plaintiff,**<br><br>**v.**<br><br>**NUETERRA HEALTHCARE MANAGEMENT, LLC**<br>**11221 Roe Avenue, Suite 320**<br>**Leawood, KS 66211**<br><br>**and**<br><br>**BUCKS COUNTY SPECIALTY HOSPITAL, LLC d/b/a ROTHMAN SPECIALTY HOSPITAL**<br>**3300 Tillman Drive**<br>**Bensalem, PA 19020**<br><br>**Defendants.** | **CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Audrey McCash, brings this action against her former employers, Nueterra Healthcare Management, LLC ("Nueterra") and Bucks County Specialty Hospital, LLC d/b/a Rothman Specialty Hospital ("Rothman") (collectively, "Defendants"). Plaintiff, a forty (40) year veteran of the health insurance industry and registered nurse, was discriminated and retaliated against by Defendants after she made complaints to her supervisors and Human Resources ("HR") that she was shocked and offended by sexual and age-based comments made to her by Defendants' facility administrator. After complaining about these remarks, Plaintiff was subjected to unfair, retaliatory treatment and was ultimately terminated on baseless grounds.

Plaintiff was discriminated and retaliated against because of her complaints of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and because of her complaints of age discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA") and the PHRA. Plaintiff seeks all damages, including economic loss, compensatory and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Audrey McCash, is a female individual and citizen of the Commonwealth of Pennsylvania.

2. Plaintiff was sixty-two (62) years old at the time of her termination.

3. Defendant Nueterra is a limited liability corporation incorporated in Kansas with corporate headquarters and/or a principal place of business in Leawood, KS.

4. Defendant Nueterra is engaged in an industry affecting interstate commerce and, at all relevant times, has regularly conducted business in the Commonwealth of Pennsylvania.

5. Defendant Rothman is a limited liability corporation incorporated in Pennsylvania with corporate headquarters and/or a principal place of business in Bensalem, PA.

6. Defendant Rothman is engaged in an industry affecting interstate commerce and, at all relevant times, has regularly conducted business in the Commonwealth of Pennsylvania.

7. Defendant Rothman is operated and managed by Defendant Nueterra.

8. At all times material hereto, Defendants have had integrated operations, have shared and common management, and have had centralized control of their employment matters.

9. At all relevant times, Defendants have acted as a single employer, joint employers, and/or alter egos.

10. The operations of Defendants are substantively consolidated.

11. At all times material hereto, Defendant Nueterra has acted as an "employer" within the meaning of the statutes which form the basis of this matter.

12. At all times material hereto, Defendant Rothman has acted as an "employer" within the meaning of the statutes which form the basis of this matter.

13. At all times material hereto, Defendants employed more than twenty (20) individuals.

14. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

15. At all times material hereto, Plaintiff was an "employee" of Defendants within the meaning of the statutes which form the basis of this matter.

## III. <u>JURISDICTION AND VENUE</u>

16. The causes of action which form the basis of this matter arise under Title VII, the ADEA and the PHRA.

17. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

18. The District Court has jurisdiction over Count II (ADEA) pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331.

19. The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

20. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

21. On or about February 10, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination and retaliation alleged herein. This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the EEOC Charge of Discrimination and Retaliation.

22. On or about March 14, 2013, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein and marked as Exhibit 2 is a true and correct copy of that notice.

23. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

24. Plaintiff was hired by Defendants on or about September 21, 2010 as a Manager of Quality at Rothman.

25. Plaintiff worked at Rothman, which is a hospital managed by Defendant Nueterra.

26. Plaintiff's offer letter states that Defendants "are very pleased to have you as a member of the Bucks County Specialty Hospital and Nueterra Healthcare teams."

27. On or about October 31, 2010, Plaintiff began reporting to Kelly Doyle (female/44[1]), who was hired as the Chief Nursing Officer.

28. In or around November 2011, Ms. Doyle was made Interim Chief Executive Officer ("CEO") of Defendant Rothman.

29. Until approximately November 2011, Ms. Doyle reported to Mark Sechrist

[1] Ages included herein are approximates.

(male/45), Group Vice President ("VP") over several facilities operated by Defendant Nueterra and Administrator of Defendant Rothman.

30. Mr. Sechrist was hired by, and reported to, Marc Goff (female/55), Senior VP, and Chief Operating Officer ("COO"), of Defendant Nueterra.

31. Throughout her tenure with Defendants, Plaintiff was a loyal, dedicated and hard-working employee.

32. During her tenure, Plaintiff's job title changed to Director of Quality and she assumed the additional title of Patient Safety Officer and Infection Preventionist.

33. In approximately April 2011, Plaintiff attended a meeting with Mr. Sechrist and her peers.

34. At one point, Plaintiff left the meeting, laying her notebook and pen on the chair. When she returned, Plaintiff accidentally sat on the pen and paper, and jumped up, startled.

35. Mr. Sechrist announced, in front of the entire room, "I guess you have to get it wherever you can."

36. Plaintiff understood this remark to be sexual and age-discriminatory in nature and was angered and embarrassed by Mr. Sechrist's comment. After the meeting concluded, Plaintiff went to Marian Agostinelli, Director of HR, and told her about Mr. Sechrist's comment. Plaintiff stated to Ms. Agostinelli that the comment made her feel old, unattractive, and asexual.

37. Ms. Agostinelli told Plaintiff to speak to Mr. Sechrist directly. That same day, Plaintiff stated to Mr. Sechrist that she was upset and offended by his sexual and age-based remark to her.

38. At a later date, Plaintiff also told Ms. Doyle that she was offended by Mr. Sechrist's sexual and age-based remark.

39. Throughout the summer of 2011, Defendants began treating Plaintiff unfairly as a result of her complaint about Mr. Sechrist's comment.

40. For example, in or around July 2011, Defendants began evaluating staff members' salaries to ensure appropriate compensation based on their respective years of experience.

41. Upon information and belief, certain staff members' salaries were raised as a result of Defendants' evaluation of salaries.

42. However, Defendants did not consider Plaintiff's salary when evaluating the salaries of other staff members, even though Plaintiff had previously complained to Ms. Doyle that she was being paid substantially less money than her younger, male peers.

43. By way of further example, Mr. Sechrist blamed Plaintiff for misplacing a contract which he stated he found in Plaintiff's office. In reality, Plaintiff previously placed this contract on Mr. Sechrist's administrative assistant's desk and told him the same. Mr. Sechrist accused Plaintiff of lying and reported the incident to Ms. Goff, his supervisor.

44. In September 2011, Defendants gave Plaintiff a negative performance evaluation based on inaccuracies and baseless accusations. Prior this evaluation, Plaintiff had never received a negative evaluation from Defendants.

45. Plaintiff asked for a copy of the negative performance evaluation because, although she disagreed with its contents, Plaintiff wanted to heed Defendants' instructions. Defendants refused to provide Plaintiff with a copy of the evaluation even though she asked for it on at least two (2) occasions.

46. On or about September 26, 2011, Ms. Doyle placed Plaintiff on a Performance Improvement Plan ("PIP"). Both the negative performance evaluation and PIP were unfair and contained false and retaliatory allegations.

47. Even though the PIP required that Plaintiff meet with Ms. Doyle weekly to go over her performance, Ms. Doyle refused to meet with Plaintiff in violation of the PIP and Defendants' progressive discipline policy.

48. As a result of Defendants' retaliatory treatment, Plaintiff began having physical symptoms of anxiety, including high blood pressure.

49. In or about October 2011, Plaintiff was in the lunchroom with her colleagues when Mr. Sechrist approached them and began talking. Mr. Sechrist stated that his mother was a real "milf." The other individuals at the table, including Jim Armstrong (Director of Nursing) and Mike Geissler (Director of Perioperative Services), reacted to Mr. Sechrist's comment.

50. Plaintiff did not immediately understand Mr. Sechrist's reference to a "milf." After lunch, she asked a co-worker what the term meant, and he said that it meant "Mother I'd like to F."

51. That same day, Plaintiff again went to Ms. Agostinelli and complained that she was offended by Mr. Sechrist's sexual and inappropriate comment.

52. Upon information and belief, Mr. Sechrist's "milf" comment was reported to Ms. Goff, who suspended Mr. Sechrist for inappropriate behavior.

53. Plaintiff learned in or around November 2011 that Mr. Sechrist was no longer employed by Defendants.

54. In or around December 2011, Ms. Goff asked Ms. Doyle if Plaintiff was off her PIP and thus eligible for an annual profit sharing bonus. Ms. Doyle replied to Ms. Goff that Plaintiff was no longer on the PIP.

55. Around the same time, Ms. Doyle told Plaintiff, in the presence of Ms. Agostinelli, that Plaintiff was performing satisfactorily and was no longer on the PIP.

56. Thereafter, in or around January 2012, Plaintiff received a profit sharing bonus of $7,300 **and** a bonus of $1,500, for a total of nearly $9,000 in bonuses for the year 2011. She had also previously received a bonus of $5,000 for successfully obtaining a Joint Commission accreditation.

57. Notwithstanding Plaintiff's satisfactory performance and receipt of two (2) bonuses, in January 2012 Ms. Doyle told Plaintiff that she was the lowest performing member of her team.

58. Ms. Doyle also accused Plaintiff of not clearing with her a two (2) week vacation which was scheduled by Plaintiff eighteen (18) months in advance.

59. Plaintiff questioned her younger, male peer, Mr. Armstrong, if he clears his two (2) week vacations with Ms. Doyle. He said that he does not and has never been reprimanded for failing to do so.

60. On or about February 2, 2012, mere weeks after Plaintiff received an annual bonus and assurance that she was performing the job satisfactorily, Plaintiff was terminated by Ms. Doyle for allegedly failing to meet her performance requirements under the PIP.

61. Moreover, at the time of her termination, Plaintiff was substantially older than all other Directors reporting to Ms. Doyle. The Directors reporting to Ms. Doyle, and their approximate ages in February 2012, were:

i. Plaintiff (62);

ii. Jim Armstrong, Director of Nursing (male/44);

iii. Mike Geissler, Director of Perioperative Services (male/42);

iv. Marian Agostinelli, Director of HR (female/52); and

v. Joe Smith, Director of Facilities (male/45).

62. Plaintiff's sex and complaint of sex discrimination was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff and in the termination of Plaintiff.

63. Plaintiff's age and complaint of age discrimination was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff and in the termination of Plaintiff.

64. Defendants have failed to provide a legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's termination.

65. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

66. The conduct of Defendants, as set forth above, was outrageous under the circumstances, was done by and with knowledge of upper management, and warrants the imposition of punitive damages against Defendants.

67. The conduct of Defendants, as set forth above, was willful and intentional.

## COUNT I – TITLE VII

68. Plaintiff incorporates herein by reference paragraph 1 through 67 above, as if set forth herein in their entirety.

69. Plaintiff's sex and complaint of sex discrimination was a substantial, motivating, and/or determinative factor in connection with Defendants' treatment of her.

70. By committing the foregoing acts of discrimination and retaliation against

Plaintiff for complaining of sex discrimination, Defendants have violated Title VII.

71. Said violations were willful and intentional and warrant the imposition of punitive damages.

72. As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

73. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

74. No previous application has been made for the relief requested herein.

**COUNT II – ADEA**

75. Plaintiff incorporates herein by reference paragraph 1 through 74 above, as if set forth herein in their entirety.

76. Plaintiff's age and complaint of age discrimination was a substantial, motivating, and/or determinative factor in connection with Defendants' treatment of her.

77. By committing the foregoing acts of discrimination and retaliation against Plaintiff for complaining of age discrimination, Defendants have violated the ADEA.

78. Said violations were willful and warrant the imposition of liquidated damages.

79. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

80. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT III - PHRA

81. Plaintiff incorporates herein by reference paragraphs 1 through 80 above, as if set forth herein in their entirety.

82. Plaintiff's sex and complaint of sex discrimination was a substantial, motivating, and/or determinative factor in connection with Defendants' treatment of Plaintiff.

83. Plaintiff's age and complaint of age discrimination was a substantial, motivating, and/or determinative factor in connection with Defendants' treatment of Plaintiff.

84. By committing the foregoing acts of discrimination and retaliation, Defendants have violated the PHRA.

85. As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

86. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

87. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the ADEA;

(c) declaring the acts and practices complained of herein to be in violation of the PHRA;

(d) enjoining and permanently restraining the violations alleged herein;

(e) entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(f) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(h) awarding punitive damages to Plaintiff under Title VII;

(i) awarding liquidated damages to Plaintiff under the ADEA;

(j) awarding Plaintiff such other damages as are appropriate under Title VII, the ADEA and the PHRA;

(k) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(l) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

Dated: June 11, 2013

By: ______________________

Stephen G. Console
Rahul Munshi
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 814-8920 (fax)
Attorneys for Audrey McCash

# Exhibit 1

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | AGENCY<br>FEPA<br>x EEOC | CHARGE NUMBER<br>530-2012-01517 |
|---|---|---|
| STATE OR LOCAL AGENCY: PHRC | | |

| NAME (Indicate Mr., Ms., Mrs.)<br>**Audrey McCash** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>**215.340.1540** |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP | DATE OF BIRTH |
|---|---|---|
| [redacted] | **Furlong, PA 18925** | [redacted] |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| **Nueterra Healthcare Management, LLC** | **~ 3,000** | **913.387.0783** |

| STREET ADDRESS | CITY, STATE AND ZIP | COUNTY |
|---|---|---|
| **11221** Roe Avenue, Suite 300 | **Leawood, Kansas, 66211** | **Johnson** |
| Please see attached for additional Respondents | | |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| Race Color **XX Sex** Religion National Origin<br>**XX Retaliation** **XX Age** Disability Other *(Specify)* | *Earliest* *Latest* 2/2/12<br>Continuing Violation |

THE PARTICULARS ARE:

A. 1. Relevant Work History

I was hired by Respondents on or about September 21, 2010 as a Manager of Quality at Rothman Specialty Hospital ("RSH"), a hospital managed by Respondent Nueterra Healthcare Management, LLC ("Nueterra.") While I initially reported to Bonnie Goodwin, Interim Administrator of Bucks County Specialty Hospital ("BCSH") doing business as ("d/b/a") RSH, I reported to several other Interim Administrators until approximately October 31, 2010, at which point I began reporting to Kelly Doyle (female, 45), when she was hired as the Chief Nursing Officer of BCSH d/b/a RSH. Until approximately November, 2011, Ms. Doyle reported to Mark Sechrist (male, 45), Group Vice President of Nueterra and Administrator of RSH. Mr. Sechrist was hired by, and reported to Marc Goff (female, 55) Senior Vice President (and later CEO) of Nueterra. In or about November, 2011, Ms. Doyle was made Interim CEO of RSH, and reported to Andrea Kingsley (female, 50), Group Vice President of Nueterra, who reported to William Comer (Male, 50), Senior Vice President of Nueterra.

| XI want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |
| x *Audrey S McCash* (Filing Date<br>Date: Charging Party *(Signature)* 2/10/12) | SIGNATURE OF COMPLAINANT<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

Additional Respondents:

1. Rothman Specialty Hospital 215.255.7400
   3300 Tillman Drive
   Bensalem, Pa 19020

2. Bucks County Specialty Hospital, LLC 215.255.7400
   3300 Tillman Drive
   Bensalem, Pa 19020

Throughout my tenure with Respondents, I was a loyal, dedicated and hard-working employee. During my tenure, my title changed to Director of Quality and I assumed the additional title of Patient Safety Officer and Infection Preventionist. I received two bonuses at the end of the 2011 calendar year.

2. Harm Summary

I believe that Respondents discriminated against me based on my age and sex and retaliated against me for complaining of the same. Evidence of discriminatory and retaliatory conduct includes, but is not limited to, the following:

a) At the time of my termination, I was the oldest Director out of the five (5) Directors reporting to Ms. Doyle. The other Directors reporting to Ms. Doyle were:

1. Jim Armstrong, Director of Nursing (male, 45);
2. Mike Geissler, Director of Operations (male, 45);
3. Mariane Agostinelli, Director of Human Resources (female, 50); and
4. Joe Smith, Director of Facilities (male, 45).

b) Upon information and belief, I was paid substantially less than the younger, male Directors. On or about January 1, 2011, I complained to Ms. Doyle and asked to receive payment equal to my peers. Respondents informed me that because I signed a letter upon hire stating that my annual salary was $80,000, they would not make an adjustment to my salary. I was not advised that my belief that I was paid less than the younger male directors was not accurate.

c) In approximately April, 2011, I attended a meeting with Mr. Sechrist and my peers. At one point, I left the meeting, laying my notebook and pen on the chair. When I returned, I accidentally sat on the pen and paper, and jumped up, startled. Mr. Sechrist announced, in front of everyone, "I guess you have to get it wherever you can." I understood this comment to be sexual in nature.

d) I was upset by Mr. Sechrist's comment and right after the meeting, I went to Ms. Agostinelli and told her what had happened and told her that Mr. Sechrist's comment made me feel old, unattractive, and asexual. Ms. Agostinelli told me to speak directly to Mr. Sechrist.

e) That same day, I told Mr. Sechrist that I was offended by his comment.

f) At a later date, I also informed Ms. Doyle about Mr. Sechrist's comment.

g) In or about July, 2011, Respondent evaluated staff salaries to ensure appropriate compensation based on their respective years of experience. Respondent did not consider me in its evaluation.

h) In or about August, 2011, after I returned from a four day weekend, Mr. Sechrist told me he had found a certain contract in my office, which was not the correct place for it. I told him that I had previously placed this contract on his administrative assistant's desk and had told him as such. Furthermore, during the two days that I was out of the office, someone else was using my desk and all the drawers in my office were locked. Mr. Sechrist told me that I was lying and reported the incident to Marc Goff, the CEO of Nueterra.

i) In or about September, 2011, Respondents gave me a negative performance evaluation.

j) On or about September 26, 2011, Respondents put me on a Performance Improvement Plan ("PIP").

k) Both the negative performance evaluation and the PIP were unfair and referenced the false and retaliatory allegation that I had the above mentioned contract in my office.

l) In or about October, 2011, Mr. Geissler, Mr. Armstrong, Ms. Doyle and I were at a lunch when Mr. Sechrist came up to our table and started talking. When Ms. Doyle stepped away from the table to answer a phone call, Mr. Sechrist stated that his mother was a real "milf." The other individuals at the table reacted, but I did not know what that term meant.

m) After lunch, I asked a coworker what the term meant and he said that it meant meant "Mother I'd Like to F."

n) That same day, I went to Ms. Agostinelli and complained that I was offended by Mr. Sechrist's comment.

o) In or about November, 2011, I found out that Mr. Sechrist was no longer working for Respondents.

p) In or about November, 2011, in the presence of Ms. Agostinelli, I asked Ms. Doyle if I was performing satisfactory and if I was off the PIP. Ms. Doyle admitted that I was.

q) In or about December, 2011, Ms. Doyle told me that she fought to get me the annual bonus payment as well as a profit sharing payment made to all employees. Ms. Doyle told me that Ms. Goff questioned Ms. Doyle regarding whether I was off the PIP and thus eligible for the profit sharing bonus and Ms. Doyle said that I was off the PIP.

r) In or about January, 2012, Ms. Doyle told me, in the presence of Ms. Agostinelli, that I was the lowest performing member of her team. In addition, Ms. Doyle told me that I did not clear with her my two week vacation, which was scheduled eighteen (18) months in advance.

s) Afterward, I questioned a male peer, Jim Armstrong, if he clears his two week vacations with her. He told me that he does not.

t) On or about February 2, 2011, in a meeting with Ms. Doyle and Ms. Kingsley, Respondent terminated me.

B. 1. Respondent's Stated Reasons

a) Respondent's alleged reason for terminating me was that I was not sustaining the objectives that were provided to me in my September Performance Improvement Plan.

b) Respondent's stated reason for my termination is pretextual.

C. 1. Statutes and Basis for Allegations

I believe that Respondent has discriminated against me and subjected me to a hostile work environment based on my sex (female) and my age (62) and a combination of my sex/age, and retaliated against me for complaining of the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

# Exhibit 2

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Audrey McCash**
[redacted]
**Furlong, PA 18925**

From: **Cleveland Field Office**
**EEOC, AJC Fed Bldg**
**1240 E 9th St, Ste 3001**
**Cleveland, OH 44199**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2012-01517** | **Luisa Burgos, Investigator** | **(216) 522-7400** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Cynthia Stankiewicz

**Cynthia Stankiewicz,**
**Acting Director**

MAR 14 2013
*(Date Mailed)*

Enclosures(s)

cc:

**Wyatt Wright,Esq.**
**Foulston Siefkin LLP**
**32 Corporate Woods, Suite 600**
**9225 Indian Creek Parkway**
**Overland Park, Kansas 66210**

**Anna Oppenheim, Esq.**
**CONSOLE LAW OFFICES**
**1525 Locust Street**
**9th Street**
**Philadelphia, PA 19102**

Enclosure with EEOC
Form 161 (11/09)